UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RUDOLPH BARBOT, :
: **COMPLAINT**
Plaintiff, :
-against- : **JURY TRIAL**
: **DEMANDED**
BRIGHTWATER TOWERS, LLC :
: 1:20-cv-2944
Defendant. :
------------------------------------------------------------X

Plaintiff Rudolph Barbot, by his attorney, The Nassirpour Law Firm, P.C., complaining of Defendant Brightwater Towers, LLC ("BT"), alleges as follows:

## NATURE OF THE ACTION

1. Rudolph Barbot was employed as a porter by Defendant BT, a property management company, until his unlawful termination in November 2018. Mr. Barbot was physically disabled while working but shortly thereafter returned to work. Defendant ordered Plaintiff to leave work. Defendant would not allow Barbot to return to work until he was fully healed in violation of the Americans with Disabilities Act (ADA). Defendant did not engage in an interactive process to try to find reasonable accommodations or offer reasonable accommodations to Barbot as required by the ADA. Defendant gave away Plaintiff Barbot's position while he was home recovering in violation of the ADA. And ultimately, Defendant terminated Barbot's employment in violation of the ADA.

2. This action seeks on behalf of Plaintiff: back pay (including lost wages, pension benefits, employment benefits, and other compensation); reinstatement and/or front pay; compensatory damages; punitive damages; attorney's fees; expert fees; costs; pre-judgment interest; and post-judgment interest.

## JURISDICTION AND VENUE

3. The court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 12117(a), 42 U.S.C. § 2000e-5(f)(3).

4. Plaintiff is a resident of Kings County, New York.

5. Upon information and belief Defendant is a domestic New York limited liability company and their principle place of business is in Kings County, New York and therefore this court has personal jurisdiction over defendant.

6. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

7. Venue is also proper pursuant to, 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 12117(a), because the Eastern District of New York is the judicial district in which the unlawful employment practices alleged herein were committed.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff dually filed a charge of discrimination with the both the NY SDHR and EEOC on December 6, 2018 and received a notice of right to sue from the U.S. Equal Employment Opportunity Commission on September 16, 2019.  Plaintiff and Defendant entered into tolling agreements which have tolled the period of time from and including December 9, 2019 to June 30, 2020.

## PARTIES

9. Plaintiff Rudolph Barbot is an adult individual who resides in Kings County, New York.

10. Plaintiff is an African American man.

11. Plaintiff was at all times relevant an employee of Defendant within the meaning of the ADA.

12. At all relevant times during his employment with Defendant, Plaintiff was a qualified individual with a disability.

13. Defendant is a New York Corporation engaged in the management of properties within Kings County, New York.

14. At all times relevant to the Complaint, Defendant employed more than fifteen employees.

15. While working for Defendant, Plaintiff worked full-time and typically worked over thirty-five hours each week.

## JURY DEMAND

16. Plaintiff demands a trial by jury.

## FACTUAL ALLEGATIONS

17. Plaintiff started working for defendant as a porter (building maintenance personnel), on October 2, 2018.

18. Plaintiff has years of experience working in maintenance and construction.

19. Defendant, as the property management company, manages a condominium complex located at 601 Surf Avenue, Brooklyn, NY 11224.  The condominiums are in multiple buildings and number over seven hundred units.

20. Plaintiff worked at the 601 Surf Avenue, Brooklyn, NY 11224 location.

21. Plaintiff worked under the direct supervision and control of the property's superintendent, an employee of Defendant.

22. On or about November 6, 2018 the building superintendent asked Plaintiff Barbot to assist other employees in removing rubbish from the building to the curb.

23. The removal of the rubbish was supervised by the superintendent, who was standing nearby watching the rubbish removal.

24. While he was removing the rubbish, Mr. Barbot had his right hand severely cut by a large broken mirror, despite the fact that he was wearing gloves.

25. Mr. Barbot tried to stop the bleeding but when the bleeding wouldn't stop, Mr. Barbot started to feel ill and went to the office of Ms. Gakeema Miller ("Miller"), the assistant property manager and an employee of Defendant.

26. Plaintiff asked Miller to call an ambulance. Miller asked to see the cut. Upon seeing the severity of Mr. Barbot's hand, Miller exclaimed "Oh my god!"

27. Mr. Barbot again requested that Miller call an ambulance since the bleeding wouldn't stop and he was feeling sick but Miller refused. Miller said that she could not call an ambulance. Plaintiff asked Miller why she couldn't call an ambulance and Miller simply restated that she could not call one.

28. In severe pain and feeling ill, Mr. Barbot was forced to call the ambulance himself.

29. The paramedics, upon examining his hand, told Plaintiff that he needed to go to the hospital.

30. The paramedics transported Mr. Barbot to the hospital where he received 5 stitches and was informed that a ligament in his right hand had been severed. Mr. Barbot is right handed.

31. On November 7, 2018, the day after the accident, Plaintiff called Defendant and received the day off so that the swelling could go down on his hand. Plaintiff informed Defendant that he had received five stitches and a ligament in his hand had been severed.

32. On November 8, 2018, Plaintiff took his prescribed pain medication and returned to work around 8:00 am and started working. Although Barbot couldn't lift heavy objects with his right hand or operate large two-handed machinery which vibrated, for extended periods of time, he was still able to perform the essential functions of his job. The essential functions of his job were cleaning and maintenance, including but not limited to sweeping, mopping, dusting, taking out the rubbish, working the compactor, shining elevators, cleaning trash shoots, and maintaining the outside grounds.

33. Mr. Barbot was performing his duties when Mr. Daniel Krass ("Krass"), the property manager and employee of Defendant, saw Plaintiff working with a bandage on his hand, around 11:30 am on November 8, 2018, and ordered Plaintiff to leave.

34. Mr. Krass told Plaintiff that he would not be permitted to return to work until he had a doctor's note stating that he was fully cleared to work. As an hourly worker, this meant a loss of income for Mr. Barbot.

35. That same day, November 8, 2018, Mr. Barbot went back to the hospital where he was first treated and asked for a note to return to work. The doctor informed Plaintiff that it was too early and that he should come back in a week to have his hand reexamined.

36. That same day, November 8, 2018, Plaintiff went back to work again and informed Mr. Krass what the doctor had said.

37. Mr. Krass told Mr. Barbot again that he could not come back to work until he was fully healed and had a doctor's note stating that he was fully recovered and cleared to return to work.

38. On November 9, 2018 Mr. Barbot left a voice message for Miller reiterating what the doctor had said so that Miller would also know the situation.

39. On November 14, 2018, Mr. Barbot called in again and spoke to Miller and updated her on his situation.

40. Unfortunately, Mr. Barbot's cut became infected and he had to get further medical assistance on November 16, 2018.  He received medication for the infection.

41. Mr. Barbot also called and left a message stating the news regarding his infection and that it would take longer before he would be back at work.

42. During his recovery, Mr. Barbot never received any communication from Defendant inquiring about his health or asking him when he would return to work.

43. Mr. Barbot's first day back to work was November 27, 2018, once his infection was healed and his hand was no longer swollen.

44. Plaintiff was back at work and performed his duties without incident on November 27, 2018, November 28, 2018, and November 29, 2018.  Even with his disability, Plaintiff was able to perform the essential functions of his position, including but not limited to sweeping, mopping, dusting, taking out rubbish, working the compactor, shining elevators, cleaning trash shoots, maintaining the outside grounds, and other cleaning and maintenance duties.

45. On November 30, 2018, on Mr. Barbot's fourth day back to work, Mr. Krass saw Mr. Barbot for the first time.  Mr. Barbot noticed Mr. Krass looking at the bandage on his hand.

46.     Later that day, November 30, 2018, Mr. Barbot was called into the property manager's office and told by Mr. Krass that he was terminated from his employment.

47.     Mr. Krass informed Mr. Barbot that his position had been given to someone else so he was no longer needed.

48.     At no point did Mr. Krass state that Mr. Barbot was being terminated due to his work performance or for any other reason except that they had hired someone else while he was on leave.

49.     As of July 2020, Mr. Barbot still suffers from his disability.  He still feels pain and stiffness in his right hand, and the loss of strength in his hand limits major life activities such as, but not limited to, lifting and performing manual tasks.

50.     Plaintiff Barbot has suffered and continues to suffer economic hardship and profound emotional distress because of defendant's unlawful and discriminatory acts.

## FIRST CAUSE OF ACTION
### ADA –Disability Discrimination

51.     Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

52.     Plaintiff had a disability within the meaning of the ADA.

53.     At all relevant times, Defendant knew of Plaintiff's disability.

54.     Defendant discriminated against Plaintiff because of his disability by not calling him an ambulance.

55.      Defendant discriminated against Plaintiff because of his disability by making Plaintiff leave work on November 8, 2018.

56. Defendant discriminated against Plaintiff because of his disability by not allowing him to return to work without a doctor's note saying he was "fully" recovered in violation of EEOC policy.

57. Defendant discriminated against Plaintiff because of his disability by terminating Plaintiff's employment because he was not fully recovered, although he was able to perform his essential job junctions.

58. Defendant discriminated against Plaintiff because of his disability by terminating Plaintiff's employment because of myths, fears and stereotypes about his disability and impact on his work.

59. At all times during Plaintiff's employment with Defendant, Plaintiff was qualified for his position.

60. At all times during Plaintiff's employment with Defendant, he was qualified to perform and could perform the essential functions of his position with and/or without a reasonable accommodation.

61. At all times during Plaintiff's employment with Defendant, Defendant was a covered employer within the meaning of the ADA.

62. At all times during Plaintiff's employment with Defendant, Defendant had more than fifteen employees.

63. At all times during Plaintiff's employment with Defendant, Defendant was an employee within the meaning of the ADA.

64. Plaintiff suffered damages as a result of the Defendant's discrimination.

65. As a result of the Defendant's discrimination, Plaintiff is entitled to back pay, front pay and/or reinstatement, compensatory damages, attorney's fees, and costs.

## SECOND CAUSE OF ACTION
### ADA – Failure To Reasonably Accommodate Disability

66. Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

67. At all times during Plaintiff's employment with Defendant, he was qualified to perform and could perform the essential functions of his position with and/or without a reasonable accommodation.

68. Defendant knew or should have known that Plaintiff needed an accommodation, but failed to take any of the required steps, and failed in their duty to engage in an interactive process to learn about his medical condition and functional limitations and to mutually explore feasible accommodations or provide obvious accommodations.

69. Before terminating Plaintiff, Defendant failed to request copies of his medical records to review and failed to speak with B's health care providers.

70. Also D didn't inquire with B re his medical condition and what limitations, if any, his hand injury imposed on performing his job responsibilities.

71. Def. failed to mutually consider whether B required reasonable accommodations, and if so, what accommodations were necessary, whether they be a medical leave of absence of job restructuring.

72. Instead of learning about Barbot's medical conditions or functional limitations and a exploring feasible reasonable accommodation , Defendant summarily fired B.

73. Feasible accommodations could have been reached between the parties.

74. Plaintiff suffered damages as a result of the Defendant's discrimination.

75. As a result of the Defendant's discrimination, Plaintiff is entitled to back pay, front pay and/or reinstatement, compensatory damages, attorney's fees, and costs.

### THIRD CAUSE OF ACTION
### ADA - "REGARDED AS" DISABILTY DISCRIMINATION

76. Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

77. Plaintiff is protected under the ADA as an individual with a "regarded as" disability.

78. At all relevant times, Defendant regarded Plaintiff as having a disability.

79. Defendant discriminated against Plaintiff when it fired him because of his "regarded as" disability.

80. Plaintiff suffered damages as a result of the Defendant's discrimination.

81. As a result of the Defendant's discrimination, Plaintiff is entitled to back pay, front pay and/or reinstatement, compensatory damages, attorney's fees, and costs.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the following relief:

A. Back pay, including wages and pension benefits, salary, employment benefits, and/or other compensation;

B. Compensatory damages;

C. Reinstatement;

D. Front pay;

E. Lost wages, salary, and employment benefits;

F. Punitive damages from the individual defendants;

G. Liquidated damages;

    H.    Declaratory relief;

    I.    Injunctive relief;

    J.    Pre-judgment interest;

    K.    Post-judgment interest;

    L.    Reasonable attorneys' fees, expert witness fees, and other costs of the action; and

    M.    Such other relief as this Court deems just and proper

Dated: Brooklyn, NY
July 2, 2020

Respectfully submitted,

**THE NASSIRPOUR LAW FIRM, P.C.**

/s/ *Shahab Nassirpour*
Shahab Nassirpour
285 Hawthorne Street #309
Brooklyn, New York 11225
212-256-1979
Shahab@Nassirpourlaw.com
*Attorneys for Plaintiff*